**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VIOLET EMMA PETERS, | |
| Plaintiff, | CIVIL ACTION NO. 3:19-cv-01672 |
| v. | (SAPORITO, M.J.) |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

## *MEMORANDUM*

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Violet Emma Peters's claim for supplemental security income benefits under Title XVI of the Social Security Act.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, we will **AFFIRM** the decision of the Commissioner.

## I.    *Background and Procedural History*

Violet Emma Peters is an adult individual born March 1, 1956.

Peters was fifty-three years old at the time of the alleged onset of disability—January 1, 2010.

On October 12, 2016, Peters protectively filed an application for benefits under Title XVI of the Social Security Act alleging disability as of January 1, 2010.  In her application, Peters alleged that the following impairments prevent her from engaging in any work: fibromyalgia, trigeminal neuralgia, thyroid disorder, pain and swelling in knees, pain and swelling in feet, osteoarthritis in all joints, depression, difficulty sleeping at night, and ongoing skin cancer all over body.  (Tr. 334).
Peters's claim was initially denied on February 28, 2017.  Thereafter, she filed a timely request for an administrative hearing.  Her request was granted. Peters appeared and testified before Administrative Law Judge ("ALJ") Scott M. Staller on April 23, 2018, in Harrisburg.  Peters was unrepresented by counsel at the hearing.  In addition, impartial vocational expert ("VE") Sheryl Bustin also appeared and testified during the administrative hearing.

On September 12, 2018, the ALJ denied Peter's application for benefits in a written decision.  On November 7, 2018, Peters sought further review of her claim by the Appeals Council, but her request was

denied on August 5, 2019. This makes the ALJ's September 2018 decision the final decision subject to judicial review by this Court.

Peters filed a timely complaint in this Court on September 27, 2019. (Doc. 1). In her complaint, Peters alleges that the final decision of the Commissioner is not in accordance with the law and is not supported by substantial evidence.

On December 3, 2019, the Commissioner filed his answer, in which he maintained that the ALJ's decision was made in accordance with the law and is supported by substantial evidence. (Doc. 4). This matter has been fully briefed by the parties and is ripe for decision. (Docs. 13, 14).

## II. *Statement of Facts*

At the time of the administrative hearing, Peters was sixty-two years old and resided with her husband and her brother in Lebanon, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 233, 333).

Peters's past work includes work as a housekeeper and as a cleaner. (Tr. 354). Peters's age at the time of her alleged onset of disability makes her an individual "closely approaching advanced age" under the Commissioner's regulations, whose age would be considered along with

any severe impairments which may seriously affect the ability to adjust to other work.

Peters stated that she suffers from osteoarthritis that affects all of her joints.  She cannot stretch out her arms all the way, her knees lock up, and when she walks she suffers with severe pain in her hips and feet. She stated she has constant in pain in her lower back.  In addition, the pain moves to her hips and upper back.   (Tr. 235).

Peters testified that she suffers from fibromyalgia and has trouble sitting for long periods of time because her body gets stiff and then she has a hard time getting motivated.  (Tr. 236).

Peters testified that she treats with Anthony G. Helwig, DO, at WellSpan Orthopedics.   She stated that she is flat-footed, she has tendonitis, fasciitis, bunions, and her left leg is constantly numb. (Tr. 236).

In addition, Peters testified that an EMG performed showed that she has a pinched nerve in her back.  (Tr. 237).  The record does not contain an EMG report.

At the time of the administrative hearing, Peters's medications included: propranolol, Amitriptyline, aspirin, diclofenac, levothyroxine,

magnesium, and sertraline.  Peters testified that her medications help relieve her symptoms to a point, but they also make her groggy and tired. (Tr. 237-38).

Peters testified that she suffers from irritable bowel syndrome. At the time of the hearing, she was seeing her family physician for this issue. Peters suffers with depression due to her constant pain. She stated that she has trouble walking because of her back and feet.  (Tr. 238).

Peters stated that she takes naps during the day. She also tends to do a lot of sitting and lying down throughout the day. She gets up and does what she can around the house, but she needs to take breaks. (Tr. 239).  She stated that she has trouble sleeping because her knees lock up and then she has to sit up in order to roll over.

In a Function Report dated January 1, 2017, Peters stated that she cares for her handicapped brother.  She makes sure he gets dressed, eats, and she is responsible for knowing where he is throughout the day.  (Tr. 343, 359).

She stated that she is able to dress and bathe/shower herself. She cooks meals, washes dishes, loads and unloads the dishwasher, vacuums, does laundry, and grocery shops.  She is unable to take out the trash,

garden, or mow the lawn.  (Tr. 241).  She stated that she enjoys watching television and doing puzzles.  (Tr. 347).

## II. Legal Standards

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions

from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F7. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity[2] that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a

---

[1] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

[2] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 416.910.

listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[4] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.912(f); *Mason*, 994 F.2d at 1064.

---

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 416.945(a)(2).

## III.  Discussion

### A. The ALJ's decision denying Peters's claim for supplemental security income.

In his September 12, 2018, decision denying Peters's claim, the ALJ evaluated Peters's application for benefits at each step of the sequential process.  At step one, the ALJ found that Peters did not engage in substantial gainful activity since October 12, 2016. (Tr. 217).  At step two, the ALJ found the following impairments were medically determinable and severe during the relevant period:  pes planus, osteoarthritis, fibromyalgia, and lumbar degenerative disc disease.  (Tr. 217). At step three, the ALJ found that Peters did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 219).

Between steps three and four, the ALJ assessed Peters's RFC.  The ALJ found that Peters had the capacity to perform light work except she: "can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch or crawl." (Tr. 220).

The ALJ's conclusion at step four of the sequential evaluation process was based on all of Peters's symptoms and to the extent to which the symptoms can reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and Social Security Ruling 16-3p. In addition, the ALJ also considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and factoring in the above-quoted RFC assessment and the VE's testimony. (Tr. 220).

At step four, the ALJ found that Peters was able to perform her past relevant work as a cleaner and housekeeper. The ALJ also found that her previous work does not require the performance of work-related activities that were precluded by her RFC. (Tr. 223). The ALJ noted that the occupation of cleaner, housekeeper, DOT #323.687-014, is a light occupation with no restrictions as to the physical demands, mental demands, and social interactions found in Peters's RFC. The ALJ found that Peters was able to perform her past relevant work as actually and generally performed. (Tr. 223).

Because the ALJ found that Peters was capable of performing her past relevant work, the ALJ did not proceed to Step Five.

11

### a. Substantial evidence supports the limitations set forth regarding both exertional and non-exertional limitations.

Peters asserts that the ALJ made errors when evaluating her symptoms.  Peters argues that the ALJ failed to include her exertional limitations due to pens planus, osteoarthritis, fibromyalgia, and lumbar degenerative disc disease and her non-exertional limitations due to basal cell carcinoma, obesity, irritable bowel syndrome, and depression when setting forth the RFC.  (Doc. 13, at 11,17).

The Commissioner's regulations explain how an ALJ evaluates a claimant's testimony regarding how symptoms affect the ability to work:

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the

objective medical evidence and other evidence.

20 C.F.R. § 416.929(c)(4).

A claimant's allegation of a symptom is not enough to establish an impairment or disability. 20 C.F.R. § 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("[u]nder the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain"). An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so. *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir.1999), and Soc. Sec. Ruling 96-7p, 1996 WL 374186.).

Under Social Security Ruling 16-3p, once the ALJ has found that a medically determinable impairment is established, the ALJ evaluates the claimant's allegations about the intensity, persistence, or functionally limiting effect of her symptoms against the evidence of record. Soc. Sec. Ruling 16-3p, 2016 WL 1119029, at *4. This evaluation requires the ALJ to examine the entire record, including objective medical evidence, plaintiff's testimony, and any other relevant evidence.

Upon review of these assignments of error, the ALJ did consider all

of Peters's symptoms in accordance with the regulations and he reviewed treatment notes and medical opinions in making his assessment. (Tr. 218-23).

Here, the ALJ considered all of Peters's symptoms along with the evidence of record and concluded that Peters's medically determinable impairments could reasonably be expected to cause her alleged symptoms but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record for the reasons explained in his decision. (Tr. 222).

However, an ALJ will not reject testimony about the intensity, persistence, or limiting effects of a symptom solely because it is not substantiated by objective evidence. 20 C.F.R. § 416.929(c)(3). Instead, the ALJ will evaluate the extent to which any unsubstantiated symptoms can be credited based on the following factors: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; any factor that precipitates or aggravates the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has

taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms, and any other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

A claimant's RFC assessment is a reflection of the most a claimant can still do despite the limitations resulting from his or her medically determinable severe and non-severe impairments.  20 C.F.R. § 416.945. The ALJ uses his or her RFC assessment at the fourth step of the sequential evaluation process to determine whether a claimant can engage in his or her past relevant work. 20 C.F.R. § 416.945(a)(5)(i). Where an RFC assessment is incorrect, or incomplete, it undermines the ALJ's conclusion at step four of the sequential evaluation process.  <u>See</u> Soc. Sec. Ruling 96-8p, 1996 WL 374184 at *4 (recognizing that the failure to make a function by function assessment at step four could result in the adjudicator overlooking some of an individual's restrictions and could lead to an erroneous finding that an individual is not disabled).

The ALJ points out Peters's alleged physical problems which

included flat feet, chronic pain, muscle stiffness, weakness, balancing problems, decreased range of motion, and fatigue.  He noted Peters's pain in her lower back, knee pain, foot pain, and diffuse pain throughout her body.  Peters indicated that these symptoms affect her lifting, squatting, bending, standing, reaching, walking, and using her hands.  In addition, Peters alleged that she is limited to carrying five pounds, and that she would only be able to walk two blocks.  She stated that she takes her brother with her when she shops because he helps carry her items.  She uses a wrist and knee brace, along with support socks for joint pain.  (Tr. 221, 348).

To support his decision, the ALJ pointed to a 2013 MRI study of the lumbar spine which showed degenerative disc disease.  Radiographic studies showed bilateral pes planus.  (Tr. 391, 800). In August of 2015 and 2016, an emergency room physician found that musculoskeletal chest pain was an exacerbation of fibromyalgia.  Peters complained of headaches, but tests ruled out neurologic etymology which too was associated with fibromyalgia.  (Tr. 29, 393-97, 432-33).  Peters received routine and conservative care which included muscle relaxants and pain medications. (Tr. 422).

The ALJ noted that Peters complained of diffuse myalgias throughout her body.   Her neck and shoulders revealed subjective tenderness to deep palpation.   The ALJ pointed to examiners who noted that she was relatively comfortable and in no acute distress during examinations.   Peters's primary care provider prescribed Elavil (amitriptyline) and Voltaren (diclofenac) for pain caused by her fibromyalgia. (Tr. 1024-25).   She was unable to tolerate physical therapy. (Tr. 1118). When examined for lower back pain, Peters jumped when the examiner palpated paraspinal muscles at L5, but there was no tenderness to the lumbar spinous process, and straight leg raise test was negative. (Tr. 1111).

An April 2018 examination found no tenderness of the lower back but reduced range of motion of the lumbar spine.   (Tr. 1132).   The EMG study showed mild to moderate chronic left L5 radiculopathy. (Tr. 1133). Peters continued to report headaches, back pain, neck pain, numbness, and weakness.   (Tr. 1119).

When reviewing Peters's complaints of chronic foot pain, the ALJ pointed out that examinations found normal range of motion and normal strength.   Peters walked with normal gait. (Tr. 484-87).   Lebanon Valley

17

Foot & Ankle Center diagnosed plantar fasciitis.  She received cortisone injections for pain from plantar fasciitis of the left foot. (Tr. 468). Examination of her feet found no edema or deformity. She had pain to palpation of the ankle and foot; the examiner found the pain was out of proportion to palpation. (Tr. 1096).  She had full passive range of motion and limited active range of motion in the left foot.  She reported extreme pain on light palpation of the left ankle.  Although when holding the ankle during knee examination, she did not respond to the pressure on the ankle and instead complained of left knee pain.  (Tr. 1123).  An arch support helped alleviate the foot pain.  (Tr. 1131).

The ALJ also pointed to a consultative examination by Ziba Monfared, M.D., who found similar findings as the treating providers. Dr. Monfared found that Peters was in no acute distress.  She walked with normal gait as well as on her toes.  She did not walk on heels due to heel pain.  She only squatted fifty percent due to her back pain.  She did not need help moving about the examination room or transferring from sitting to standing.  Her joints were stable and non-tender.  Dr. Monfared noted that she was unable to evaluate trigger points as Peters claimed she had pain everywhere on her body.  Her strength was normal in upper and

lower extremities.   Hand and finger dexterity was intact, and grip strength was normal.  X-rays found degenerative changes of the lumbar spine with moderate degenerative spondylosis at L2-3 and L3-4 and disc spaces narrowing at L1-2 and L4-5.  (Tr. 959-76).

The ALJ found that the objective medical records support the limitations.  The clinical examinations found generally normal strength and ranges of motion with occasional restriction due to pain that improved.   Peters received routine conservative care that included medication as well as injections that stabilized and improved her symptoms.  In fact, the ALJ stated that Dr. Monfared's examination was similar to that of the treating provider showing normal strength, and mild decreases in range of motion despite the alleged extreme pain. (Tr. 222).

The ALJ mentioned hyperlipidemia and hypothyroidism and pointed out that the medication generally controlled these conditions.  Also, the ALJ noted that Peters has a history of basal cell skin carcinoma which is followed by a dermatologist.   The ALJ noted that the carcinoma and treatment did not cause more than minimal limitations in work-related functioning.   In addition, the ALJ considered Peters's obesity in his decision.  Social Security Rulings 00-3 and 02-1 require that an ALJ

consider obesity in determining whether claimants have medically determinable impairments that are severe, whether those impairments meet or equal any listing, and, finally, in determining the RFC.  The ALJ reviewed the reported height and weight of Peters and pointed out that Peters's medical providers did not note more than a minimal restriction on her ability to perform work-related activities due to obesity. (Tr. 218).

The ALJ reviewed and evaluated Peters's major depressive disorder under Listing 12.04.  Pointing to routine and conservative care from her primary care provider without the need for intensive and extensive mental health treatment. The ALJ found that each of these impairments caused no more than minimal limitations in Peters's ability to perform work related activities.

In addition, the ALJ found that Peters's lumbar degenerative disc disease did not meet the criteria of Listing 1.04, explaining in his opinion in detail as to why it did not meet the Listing.  The ALJ evaluated Peters's pes planus under Listing 1.02 and again found that she did not meet or medically equal the requirements of this Listing, discussing his reasoning.

In the end, the ALJ found that the medical evidence of record supported the residual functional capacity assessment. The ALJ pointed out that while the record established Peters's medically determinable impairments, the medical evidence of record did not support the degree of symptoms, flat feet, chronic pain, muscle stiffness, weakness, balancing problems, decreased range of motion, and fatigue and resulting functional limitations alleged by her. He noted that Peters's treatment had been essentially routine and conservative with no significant objective findings documented by the treating providers despite Peters's significant subjective allegations. In addition, Peters has admitted the capacity to engage in certain activities that are suggestive of a greater functional capacity than alleged, rendering her allegations of debilitating limitations less persuasive.

The ALJ accommodated for the residual functional capacity with regard to her functional limitations through the limitation to light work with occasional climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds and only occasional balancing, stooping, kneeling, crouching, or crawling. The ALJ found that there was no indication in the records that Peters was more limited than found in her residual functional

capacity.

The ALJ found that the medical records supported the limitation given in Peters's RFC. The objective clinical examinations showed generally normal strength and ranges of motion with occasional restriction due to pain were not supported by examination findings. She continued to receive routine and conservative care despite her allegations of extreme pain. Additionally, the ALJ also considered Peters's statements concerning the intensity, persistence and limiting effects of the symptoms in accordance with Social Security Ruling 16-3p and found that the statements were not consistent with the record.

The ALJ found that the objective medical evidence does not support Peters's allegations of debilitating symptoms and also noted inconsistent information regarding daily activities in that she is not limited to the extent that one would expect to be given her complaints of disabling symptoms and limitations. She admitted she is able to perform tasks associated with independent living. She performs light household chores, such as laundry, handles her own personal care without assistance of others, handles finances, shop in stores, drives a vehicle, and assists in the care of her disabled brother. (Tr. 342-52). The ALJ found that these

abilities support the residual functional capacity set forth above and were quite inconsistent with her allegations of totally debilitating impairments.

Finally, Peters argues that the ALJ erred by assigning too much weight to the opinion of consultative examiner, Ziba Monfared, M.D., whose opinions were not reflective of her exertional limitations. (Doc. 13, at 20).

Here, the ALJ noted that he gave significant weight to the opinion of Dr. Monfared that Peters was capable of:

> frequently lifting one hundred pounds and occasionally carrying one hundred pounds and frequently carrying fifty pounds and of standing and walking seven hours each and sitting eight hours. She can frequently use foot controls and can occasionally climb ladders and scaffolds, balance, or crawl with frequent climbing ramps and stairs, kneeling, or crouching. She can tolerate occasional exposure to heights and frequent exposure to moving mechanical parts and extreme cold.

(Tr. 959-75).

In support, the ALJ stated that the objective medical records support the limitations. He stated that the objective clinical examinations found generally normal strength and ranges of motion with occasional restriction due to the pain that improved. He noted that

Peters received routine and conservative care that included medication as well as injections that stabilized and improved her symptoms. As stated above, he noted that Dr. Monfared's examination was similar to that of the treating providers, which showed normal strength and mild decreases in range of motion despite her alleging extreme pain.

Here, we find that the ALJ appropriately determined that Peters's allegations regarding the limiting effects of her condition were not supported by the record evidence. The ALJ's RFC is supported by record evidence and by Peters's own reported activities.

An appropriate Order will follow.

<u>**s/Joseph F. Saporito, Jr.**</u>
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated:  November 19, 2020